**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Plaintiff,**

**v.**

**CONTINENTAL ILLINOIS CORPORATION, et al., Defendants.**

**HARBOR INSURANCE COMPANY and Allstate Insurance Company, Plaintiffs,**

**v.**

**CONTINENTAL ILLINOIS CORPORATION, et al., Defendants.**

Nos. 85 C 7080, 85 C 7081.

United States District Court, N.D. Illinois, E.D.

June 18, 1986.

Frank J. Roan, James G. Hiering, Dennis C. Waldon, Jeffrey Berkowitz, A. Benjamin Goldgar, Keck, Mahin & Cate, Chicago, Ill., for plaintiff.

John T. Hickey, Jr., David M. Stryker, John Donley, Kirkland & Ellis, Chicago, Ill., for Outside Directors.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Harbor Insurance Company ("Harbor"), Allstate Insurance Company ("Allstate") and National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") have sued Continental Illinois Corporation ("CIC"), its subsidiary Continental Illinois National Bank and Trust Company of Chi-

cago ("Bank") [1] and a host of other defendants, seeking to avoid liability under the directors' and officers' ("D & O") policies plaintiffs had issued to CIC. Among the individual defendants were 18 who had served as Continental outside directors at one time or another, and 17 of those persons (collectively "Outside Directors") have now moved to be dismissed as defendants.

Unlike the numerous other motions that have complicated the early life of these lawsuits,[2] the present motions are constitutional in nature. Outside Directors call upon the Article III limitation of federal-court jurisdiction to "Cases" or "Controversies" as the premise for their elimination as defendants. They are right.

 Before this opinion turns to explaining why that is so, one preliminary procedural issue should be addressed. Though Outside Directors characterize their motions as "to dismiss" and invoke Fed.R.Civ.P. ("Rules") 9(b) and 12, they adduce matters outside the four corners of the Complaints. That should ordinarily be permitted only by converting the motions into Rule 56 summary judgment motions (see the last sentence of Rule 12(b)). In these cases, however:

1. Outside Directors are clearly not ready to stake everything on one throw, as the rule against holding back on a summary judgment motion ordinarily requires. See *Publishers Resource, Inc. v. Walker-Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir.1985), quoting from this Court's opinion in *Keene Corp. v. International Fidelity Insurance Co.*, 561 F.Supp. 656, 665–66 (N.D.Ill. 1982), *aff'd and adopted*, 736 F.2d 388, 393 (7th Cir.1984); *Factofrance Heller v. I.P.M. Precision Machinery Co.*, 627 F.Supp. 1412, 1416 (N.D.Ill.1986).

2. On the other hand, Harbor-Allstate and National Union really do not quarrel with the matters Outside Directors advance (the non-involvement of any Outside Director in the application for is-

suance of the D & O policies, and the absence of any allegations of personal fraud or dishonesty on the part of any Outside Director).

Accordingly this opinion will operate on the premise Outside Directors have accurately stated the facts just identified. By definition, of course, the dismissal of Outside Directors must be without prejudice to the possible reassertion of viable claims against them if the facts prove otherwise. Two caveats are in order in that respect, however:

1. Rule 11 would mandate lawyer and client investigation before *any* such renewed claims were to be filed.

2. Even were an Outside Director personally implicated in fraudulent conduct, that fact could serve as evidence supporting a claim for rescission or declaratory relief against *Continental* —but for the reasons explained hereafter (see n. 7), it would not make ripe an otherwise nonjusticiable claim against that Outside Director.

With that threshold discussion out of the way, consideration of the motions themselves is in order.

 D & O policies provide two kinds of coverage: one for the directors and officers themselves when they become embroiled in litigation stemming from their services in those corporate capacities, and the other for the corporation when it has indemnified directors and officers for the same thing. To have a ripe "case or controversy" with a director or officer, an insurer must at a minimum be subject to the assertion of a real (and not merely a possible) claim by the director or officer under the policy. *Solo Cup Co. v. Federal Insurance Co.*, 619 F.2d 1178, 1189 (7th Cir.), *cert. denied*, 449 U.S. 1033, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980).

 In this instance eight of the Outside Directors were named among the initial

---

1. CIC and Bank are collectively called "Continental."

2. This opinion is the fourth to treat with the motions this Court inherited on the recent reassignment of these actions to its calendar.

defendants in three lawsuits arising out of the same events that triggered these actions: *In re Continental Securities Litigation,* No. 82 C 4712 (N.D.Ill.); *Frankenstein v. Continental Illinois Corp.,* No. 82 L 50353 (Cir.Ct. Cook County, Ill.); *Vlahandreas v. Continental Illinois Corp.,* No. 7146 (Del.Ch. New Castle County). But those eight Outside Directors are wholly out of each of those three lawsuits, and Continental has fully indemnified them for all fees and expenses they incurred while defendants. That means those Outside Directors have no claim at all against Harbor-Allstate or National Union, and they assert none.

Harbor-Allstate and National Union try to make much of the fact that the dismissal orders in the three actions were without prejudice. But the short answer is "So what?" It may perhaps be that, given the without-prejudice dismissals, Continental could not have been forced to indemnify Outside Directors.[3] But it did, and—as the preceding paragraph has said—that negates any live controversy between the eight Outside Directors and any D & O insurer. In Article III terms, no present "case or controversy" exists in connection with the three previously-referred-to lawsuits.

■ Moreover, before any *future* claim by an Outside Director against Harbor, Allstate or National Union (and hence before any anticipatory declaratory-relief claim by any of those insurers against that Outside Director) could become justiciable, someone would have to assert a further claim against the Outside Director coming within the scope of the D & O policies. And under the specific terms of the D & O policies, that hypothetical future claim would have to be of the type falling *outside* the scope of Continental's broad-scale obligation to indemnify the Outside Di-

rector. As Harbor's policy Section B, ¶ 4(I) states (a provision also common to all the other D & O policies, which are of the "following form" type):

> The company shall not be liable to make any payment in connection with any claim made against the insureds:
>
> \* \* \* \* \* \*
>
> for which the insureds shall be indemnified by the corporation for damages, judgments, settlements, costs, charges and expenses incurred in connection with the defense of any action, suit or proceeding to which the insureds are a party or with which they may be threatened or in connection with any appeal therefrom, pursuant to the law, common and statutory, or the charter or by-laws of the corporation duly effective under law, which determines and defines such rights of indemnity.

That kind of speculative double contingency—assertion of a future claim that falls outside the scope of Continental's indemnity, and thus within the insurer's policy coverage—is not the stuff of which present "cases or controversies," and hence present federal jurisdiction, are wrought. *Solo Cup,* 619 F.2d at 1189.

■ There *is,* to be sure, one pending lawsuit in which all Outside Directors except Gordon Corey and William Hewitt are named defendants—the individual claim (and the stayed class claim) in *DiLeo v. Baumhart,* No. 84 C 7305 (N.D.Ill.) (pending before this Court's colleague Honorable Charles Norgle). All 15 Outside Directors in that lawsuit have filed a motion to dismiss, which has long been pending.[4] But what controls here is that any claims by Outside Directors against Harbor-Allstate or National Union arising out of *DiLeo* are also wholly conjectural:

1. Any Outside Director is entitled to indemnification from CIC not only if he[5]

---

3. See Appendix.

4. It is not clear whether that motion has been treated as stayed along with the class claim.

5. This is not a chauvinistic use of the male pronoun. As chance would have it, the one

female outside director named in the Complaints here is the only non-participant in the motions to dismiss. For that reason the defined term "Outside Director" in fact speaks of an all-male group.

prevails in *DiLeo* (whether "on the merits or otherwise") but even if, not having prevailed (CIC Certificate of Incorporation, Outside Directors' Mem. Ex. D):

> he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the corporation....

2. No claim made against Outside Directors in *DiLeo* has been identified as falling outside the scope of CIC's duty of indemnification.

3. Understandably, then, no Outside Director claim has been asserted or even threatened against Harbor, Allstate or National Union arising out of *DiLeo*.

It is instructive to contrast the situation of Outside Directors with that of CIC itself. As to CIC the very pendency of litigation such as *DiLeo* at least arguably creates a "case or controversy" with its insurers: CIC has an existing liability to all defendant officers and directors not charged with fraud or dishonesty (which are disqualifying events for D & O coverage), and CIC has no place to go for recoupment of that liability except via a claim against its D & O insurers. Though the cases are not uniform as to whether an actual claim by an insured is necessary to create a "case or controversy" or whether "reasonable apprehension of liability" is enough to create a justiciable controversy under such circumstances, authority exists for the latter proposition (see *Diamond Shamrock Corp. v. Lumbermens Mutual Casualty Co.*, 416 F.2d 707, 710 (7th Cir. 1969)). Without question CIC has a ripe claim against the insurers stemming from *DiLeo*. And because under such cases as *Diamond Shamrock* the insurers need not wait for the litigation shoe to drop by CIC's assertion of that claim, that would give the insurers a ripe declaratory judgment claim against CIC.

But where as here Outside Directors do not themselves have a current live claim against the insurers, the precondition for an anticipatory lawsuit by the insurers is missing. In sum, Outside Directors Mem. 6–7 (footnotes omitted) has hit the matter on the head:

> Plaintiffs' claims against the outside directors should be dismissed for lack of subject-matter jurisdiction because those claims are, at best, premature. Plaintiffs and the outside directors have no dispute and will not unless and until the *DiLeo* case is settled or lost *and* it is determined that the outside directors are not entitled to indemnification under Continental's Articles of Incorporation. Only then can plaintiffs be liable to the outside directors under Section B of the directors' and officers' policies. Indeed, plaintiffs concede there is no present controversy by alleging that, "To the extent that the defendants are not indemnified by Continental or the Bank, they *may* seek reimbursement under the policies." (Harbor/Allstate complaint, ¶ 96; emphasis supplied).[6]

Accordingly *Solo Cup* applies with equal force to reject any present "case or controversy" stemming from *DiLeo*. All Outside Directors (and not just the eight who have been dismissed from the other three lawsuits) must be and are dismissed from these actions as defendants.

Finally, it is wholly fallacious for Harbor-Allstate and National Union to argue Outside Directors' unwillingness to give up all possible future claims is somehow an indicium of the existence of a present case or controversy. Just to state that contention shows its poverty: Where a claim is rendered presently nonjusticiable by the fact further contingencies would have to occur to make it ripe for assertion, nothing follows from a party's unwillingness to forego a future assertion of the claim if the contingencies were in fact to come about.

All this really obviates any need for this Court to deal with the obvious Rule 9(b)

---

**6.** [Footnote by this Court] That same "may" language, confirming the purely hypothetical and contingent nature of any possible future claim by Outside Directors, also appears in National Union Complaint ¶ 94.

deficiencies of the Complaints against Outside Directors.[7] All that remains open is the Corey-Hewitt Rule 11 motion. Because Harbor-Allstate and National Union have been strenuously urging the merits of the dismissal motions, they have not really spoken to Rule 11 considerations. They are ordered to do so on or before July 2, 1986.

## Appendix

Under CIC's Certificate of Incorporation (as is typical of provisions adopted under authority of Del.Corp.Law § 145 ["Section 145"], Del.Code Ann. tit. 8, § 145), indemnification is required whenever a director or officer "has been successful on the merits or otherwise in defense of any action, suit or proceeding...." Normal reading of the "or otherwise" alternative could well support mandatory indemnification following a "without prejudice" dismissal, especially under the circumstances that occasioned that outcome as to Outside Directors in the three substantive lawsuits. Nonetheless *Galdi v. Berg*, 359 F.Supp. 698, 701–02 (D.Del.1973) has construed the same "or otherwise" language in Section 145 as not giving an officer or director the right to force indemnification, against the corporation's will, following a without-prejudice dismissal from litigation that had charged the officer with wrongdoing.

It is unnecessary to decide whether *Galdi*, the only reported case construing Section 145 in that respect, should be accepted as a definitive reading of that provision. What is clear is that the *Galdi* holding is beside the mark here. Whether or not Continental could have been compelled to do so by a lawsuit, it paid Outside Directors' litigation expenses in the underlying lawsuits. Indeed, *Galdi* itself supports the permissibility of so doing, for in part it approved indemnification of officers who had been dismissed from the derivative litigation partly with prejudice and partly without (359 F.Supp. at 700). But once more the critical fact is not whether Continental could have been forced to disgorge but rather that it did so in fact.[1]

In any event, none of Outside Directors is out of pocket, and therefore none of them has any basis for asserting a claim against any D & O insurer. It follows inexorably that the D & O insurers, invulnerable to any possible claim by Outside Directors, cannot take the offensive by suing any of them to forestall a wholly nonexistent claim.

7. If Outside Directors were guilty of fraud or dishonesty that tainted the D & O policies (something Harbor-Allstate and National Union have really not alleged), Harbor-Allstate and National Union would be relieved from liability and hence would presumably have sustained no damages. If Outside Directors were guilty of fraud or dishonesty that merely affected their own rights of reimbursement (something Harbor-Allstate and National Union have also really not alleged), that would still leave the current actions premature and nonjusticiable for the reasons already discussed.

1. Success in the underlying litigation is not the only basis for officer or director indemnification. Again tracking Section 145, CIC's Certificate of Incorporation permits indemnification "if [the officer or director] acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the corporation," except where there has been an actual adjudication of liability for negligence or misconduct and the Delaware Court of Chancery has not held indemnification appropriate despite such liability. For aught that appears, Continental could have reimbursed Outside Directors under that authority, irrespective of whether the "or otherwise" language covers without-prejudice dismissals. However, no factual inquiry is called for on that score, because the fact of indemnification rather than its legal authorization controls for present purposes.