EXECUTIVE RISK INDEMNITY
INC., Plaintiff,

v.

SPRINT CORPORATION, and William
T. Esrey, et al., Defendants.

SPRINT CORPORATION,
Counter Claimant,

v.

Executive Risk Indemnity Inc., and Continental Casualty Company, and Rli Insurance Company, Counter Defendants.

No. 02–1449–WEB.

United States District Court,
D. Kansas.

Sept. 9, 2003.

Nathan Daniel Leadstrom, Wayne T. Stratton, Goodell, Stratton, Edmonds & Palmer, Topeka, KS, for Plaintiff.

Kasey A. Rogg, Kevin M. Bright, Husch & Eppenberger, LLC–Wichita, Wichita, KS, for Defendant/Counter Claimant.

John J. Rasmussen, Kevin T. Streit, William C. Morison–Knox, Morison–Knox Holden Melendez & Prough LLP, Walnut Creek, CA, Arthur S. Chalmers, Hite, Fanning & Honeyman L.L.P., Wichita, KS, Nathan Daniel Leadstrom, Goodell, Stratton, Edmonds & Palmer, Topeka, KS, for Counter Defendant.

## MEMORANDUM AND ORDER

WESLEY E. BROWN, Senior District Judge.

The Court now considers the motion of certain individual defendants to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and (6). (Doc. 46).

## I. FACTUAL BACKGROUND

Plaintiff Executive Risk Indemnity Inc. (Executive Risk) brought this declaratory judgment action to determine whether its obligations to Defendant Sprint Corporation (Sprint) and to Defendants William T. Esrey, et al.[1] are governed by liability

---

1. The Complaint (and Amended Complaint) named 29 individual defendants: William T. Esrey, Ronald T. LeMay, Kevin E. Brauer, Arthur B. Krause, Andrew J. Sukawaty, John E. Berndt, Theodore H. Schell, Thomas E. Weigman, Don A. Jensen, Bruce Branyan, William E. McDonald, Martin J. Kaplan,

insurance policies in force until July 1, 2000, or a policy in force after July 1, 2000.

Executive Risk attached hundreds of pages to its complaint as exhibits, including copies of the three policies in question.[2] Two of the polices, captioned "Directors and Officers Liability Insurance Policy Including Company Reimbursement," oblige Executive Risk to pay claims on behalf of Defendants William T. Esrey, et al. "except for **Loss** which [Sprint] pays to or on behalf of the **Insured Persons** as indemnification." Amended Complaint, exhibit A. "Insured Persons" are defined as "any past, present or future director or officer of [Sprint]," which includes the Individual Defendants. *Id.* Claims "made . . . against the **Insured Persons** . . . which [Sprint] pays to or on behalf of the **Insured Persons** as indemnification" are paid by Executive Risk to Sprint. *Id.*

The policies also contain a "deemer clause" which states, "[t]he certificate of incorporation, charter, articles of association or other organizational documents of [Sprint] . . . including by-laws and resolutions, will be deemed to have been adopted or amended to provide indemnification to the Insured Persons to the fullest extent permitted by law." *Id.,* Form C21120, IV(D)(1). A retention applies if indemnification is legally permissible, "whether or not actual indemnification is made . . .," unless indemnification was not made solely because of Sprint's financial insolvency. *Id.,* Form C21120, IV(D)(2).[3] If indemnification is not legally permissible, or if it is not made solely because of Sprint's financial insolvency, the retention is $0.00.

Where a claim is made against both the Insured Persons and Sprint, they, along with Executive Risk,

> agree to use their best efforts to determine a fair and proper allocation, as between [Sprint] and the Insured Persons, of all amounts, including Defense

---

Gene M. Betts, James Richard Devlin, Michael B. Fuller, Len J. Laurer, John P. Meyer, Arthur Allan Kurtze, Benjamin Watson III, Linda Koch Lorimer, Dubose Ausley, Warren L. Batts, Michael Bon, Irvine O. Hockaday, Harold S. Hook, Charles E. Rice, Louis W. Smith, Ron Sommer, and Stewart Turley. All but Michael Bon and Ron Sommer are represented by Kasey A. Rogg and Kevin M. Bright of Husch & Eppenberger, LLC. Counsel alleges that Bon and Sommer are foreign citizens residing outside the United States. In any event, the record shows that no summons has been issued as to Bon and Sommer, and they have not otherwise made an appearance in this matter. The 27 individual defendants who have appeared, all current or former directors and officers of Sprint, have filed the motion to dismiss which is now before the Court. These 27 individuals will hereinafter be referred to as the "Individual Defendants." The Individual Defendants plus Bon and Sommer will be referred to as " Defendants William T. Esrey, et al."

**2.** In its answer, Sprint denies that two of the three policies attached by Executive Risk are complete. *See* Sprint Corporation's Answer to the Amended Complaint and First Amended Complaint, ¶¶ 35–37. Sprint identifies several endorsements, along with cover pages and indexes, which were allegedly not attached. Sprint does not provide the allegedly missing items, however. In its counterclaim, Sprint admits that the policies as provided by Executive Risk are true and correct copies of "most of the operative provisions . . ." of the policies. *See id.* at ¶¶ 127, 132. In its answer to this assertion, Executive Risk maintains that policies it attached to its Amended Complaint were "true and complete . . . ." *See* Executive Risk Indemnity Inc.'s Reply to Sprint Corporations's First Amended Complaint, at ¶¶ 127, 132. The Individual Defendants, for their part, have not yet answered. The third policy is an excess indemnity policy in force from July 1, 1997 to July 1, 1998. See Amended Complaint, exhibit F.

**3.** A retention is the amount of loss which must be borne by the insured. *See General Star National Ins. Corp. v. World Oil Co.,* 973 F.Supp. 943, 948–49 (C.D.Cal.1997); 20 Holmes' Appleman on Insurance 2d, § 130.10(B), at 317 (2002).

Expenses, that the Insured Persons and/or [Sprint] become obligated to pay in connection with such Claim. In making such determination, the parties shall take into account the relative legal and financial exposures of, and relative benefits obtained in connection with the defense and/or settlement of the Claim by, the Insured Persons and [Sprint]. In the event that an allocation cannot be agreed to, then [Executive Risk] shall be obligated to make an interim payment of the amount of Loss, including Defense Expenses, which parties agree is not in dispute ... until a final amount is agreed upon or determined pursuant to the provisions of this Policy and applicable law.

*Id.,* Endorsement No. 5, D22083; Endorsement No. 16, D24788. Claims include "any civil proceeding in a *court of law or equity* ...." Amended Complaint, exhibit A.

Executive Risk also attached copies of complaints in numerous lawsuits growing out of the proposed merger between Sprint and World Com, Inc. (World Com). The lawsuits are generally grouped into suits attempting to block the proposed merger, and those which allege that Defendants William T. Esrey, et al. improperly obtained vesting of their stock options. Executive Risk and the Individual Defendants agree that Executive Risk has paid out over $1,000,000.00 in defense expenses related to these lawsuits.

The first group of lawsuits was dismissed after Sprint and World Com abandoned the proposed merger in June 2000 upon formal opposition by regulatory authorities. Executive Risk, Sprint, and Defendants William T. Esrey, et al. then entered into an "Interim Funding Agree-

ment" (Agreement) on or about August 1, 2001, to deal with defense costs. The Agreement also set out the conditions under which Executive Risk would advance funds to cover the defense of the second group of lawsuits.

On or about April 7, 2003, Sprint and Defendants William T. Esrey, et al. executed a "Memorandum of Understanding" as a tentative settlement of the second group of lawsuits.[4] The terms of the tentative settlement provide a release to Sprint and Defendants William T. Esrey, et al. in exchange for $50,000,000.00 and other consideration. The $50,000,000.00 is to be paid by the "Settling Securities Defendants," who are identified as Sprint and Defendants William T. Esrey, et al. *See* Memorandum of Understanding, at 6.

On or about April 30, 2003, Executive Risk, Sprint, and Defendants William T. Esrey, et al. agreed to an "Amendment to Interim Funding Agreement" (Amendment). The Amendment begins with a number of "Whereas" clauses, the tenth of which states,

> **WHEREAS,** Sprint has agreed to indemnify and is indemnifying [Defendants William T. Esrey, et al.] (a) for all legal fees and expenses incurred by them in the [litigation] for which [Executive Risk] has made or will be making advances under the Agreement or this Amendment and (b) for all settlement amounts incurred by them in the [litigation].

Amended Complaint, exhibit G. After the tenth Whereas clauses, the Amendment states, "**NOW, THEREFORE,** in consideration of the mutual promises, covenants, agreements and other undertakings herein, and for other good and valuable consid-

---

4. The Memorandum of Understanding was attached to Sprint's Answer to Amended Complaint and Amended Counterclaim as an exhibit. (Doc. 48). Defendant Benjamin

Watson III is identified as "I. Benjamin Watson III." Defendant Irvine O. Hockaday is identified as "Irvine O. Hockaday, Jr." *See* Memorandum of Understanding, at 2–3.

eration, the Parties mutually agree, each with the other, as follows." *Id.* In the following text Executive Risk agreed to "contribute .... $12,500,000.00 to the settlement ... on an interim basis without prejudice to any and all rights that are or may be available to it under the Policies and applicable law." *Id.* Executive Risk also agreed to continue advancing defense expenses. Regarding the advances, the Agreement states:

> [Executive Risk agrees] not to recover from [ Defendants William T. Esrey, et al] any amount advanced .... under the Agreement or this Amendment; provided, however, that [Executive Risk's] agreement in this regard is premised on Sprint's indemnification of [Defendants William T. Esrey, et al] for the amount at issue. To the extent it is determined that any amount should not have been advanced, [Executive Risk] will look exclusively to Sprint for reimbursement of such amount so long as Sprint has provided indemnification to [Defendants William T. Esrey, et al.] in accordance with the tenth Whereas clause of this Amendment.

*Id.*

Executive Risk then amended its complaint to include allegations that Sprint "was determined to settle for its own business purpose, and for an amount apparently having nothing to do with Sprint's own analysis of the substance or lack of merit in [the] claims, as previously and consistently communicated to Executive Risk." Amended Complaint For Declaratory Judgment, at ¶ 84. In addition to its previous prayer for declaratory judgment on policy coverage, Executive Risk seeks a "judicial determination that the settlement amount ... was not reasonable for purposes of coverage under the Policies and limiting Executive Risk's liability accordingly ...." *Id.*, at 24.

The Individual Defendants, claiming that they have no case or controversy with Executive Risk, move to dismiss.

## II. ANALYSIS

### A. *Procedural standards*

#### 1. Rule 12(b)(1)

■ The existence of subject matter jurisdiction is a threshold issue. *See Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210, 227 (1998); *Laughlin v. Kmart Corp.,* 50 F.3d 871, 874 (10th Cir.1995).

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.

Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's references to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. The jurisdictional question is intertwined with the merits of the case if subject

matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.

*Holt v. United States,* 46 F.3d 1000, 1002–03 (10th Cir.1995) (citations omitted). In the case of a facial attack, jurisdiction must be based on factual allegations in the complaint, not on mere conclusory allegations. *See Amoco Production Co. v. Aspen Group,* 8 F.Supp.2d 1249, 1251 (D.Colo.1998) (quoting *Groundhog v. Keeler,* 442 F.2d 674, 677 (10th Cir.1971)).

### 2. Rule 12(b)(6)

The Individual Defendants seek, in the alternative, dismissal for failure to state a claim upon which relief can be granted.

A 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. All well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party.

\* \* \* \* \* \*

A 12(b)(6) motion must be converted to a motion for summary judgment if matters outside the pleadings are presented to and not excluded by the court and all parties are given reasonable opportunities to present all material made pertinent to such a motion by Rule 56.

*GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir. 1997) (citations, internal quotations, and punctuation omitted).

### B. *Substantive standards*

As the language of the Declaratory Judgment Act makes clear, the Court must consider both jurisdiction and the prudence of maintaining the action: "[i]n a case of *actual controversy within its jurisdiction* .... any court of the United States ... *may declare the rights and other legal relations* of any interested party seeking such declaration ...." 28 U.S.C. 2201(a) (emphasis supplied); *Kunkel v. Continental Cas. Co.,* 866 F.2d 1269, 1273 (10th Cir.1989).

### 1. Jurisdiction

The subject matter jurisdiction of this Court is limited by art. III, § 2 of the U.S. Constitution, which allows judicial consideration of "cases" or "controversies." *Kunkel,* 866 F.2d at 1273. In conformity with this jurisdictional limitation, the Declaratory Judgment Act "[b]y its terms ... applies to 'cases of actual controversy,' .... thus excluding an advisory decree upon a hypothetical state of facts." *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 325, 56 S.Ct. 466, 80 L.Ed. 688, 699 (1936). The "controversy must be definite and concrete, touching on the legal relations of the parties having adverse legal interests," *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 81 L.Ed. 617, 621 (1937), and it must be "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826, 829 (1941). *See Calderon v. Ashmus,* 523 U.S. 740, 745–46, 118 S.Ct. 1694, 140 L.Ed.2d 970, 977 (1998); *Babbitt v. Farm Workers,* 442 U.S. 289, 297–98, 99 S.Ct. 2301, 60 L.Ed.2d 895, 906 (1979).

The existence of a case or controversy is a matter of degree. *See Maryland Casualty,* 312 U.S. at 273, 61 S.Ct. 510, 85 L.Ed. at 829. "As is so often the situation in constitutional adjudication, those two words ['case,' 'controversy'] have an iceberg quality, containing beneath their surface simplicity submerged complexities...." *Flast v. Cohen,* 392 U.S. 83, 94, 88 S.Ct. 1942, 20 L.Ed.2d 947, 958 (1968). The burden of establishing an actual case or controversy is on the party seeking declaratory judgment. *Cardinal*

*Chemical v. Morton Intl.*, 508 U.S. 83, 95, 113 S.Ct. 1967, 124 L.Ed.2d 1, 14 (1993).

### 2. Prudential considerations

■ Even where subject matter jurisdiction exists, "the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214, 223 (1995). The "unique breadth of this discretion" makes the Declaratory Judgment Act distinguishable from discretion in other areas of the law. 515 U.S. at 287, 115 S.Ct. 2137, 132 L.Ed.2d at 223–24. Because it is an enabling act, it does not confer an absolute right upon a litigant. *Green v. Mansour*, 474 U.S. 64, 72, 106 S.Ct. 423, 88 L.Ed.2d 371, 379 (1985). The propriety of maintaining a declaratory judgment action may turn on equitable considerations. *Id.*

■ Nevertheless, "a District Court cannot decline to entertain such an action as a matter of whim or personal disinclination." *Public Affairs Associates v. Rickover*, 369 U.S. 111, 112, 82 S.Ct. 580, 7 L.Ed.2d 604, 606 (1962). The Tenth Circuit has provided a number of factors a trial court may consider in weighing whether to proceed with a declaratory judgment action.

■ whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena of a race to res judicata"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*St. Paul Fire and Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1169 (10th Cir. 1995) (quoting *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994)).

### C. Discussion

### 1. Jurisdiction

■ The Individual Defendants base their Rule 12(b)(1) arguments on the constitutional case or controversy requirement, and their Rule 12(b)(6) arguments on the Declaratory Judgement Act itself. *See* Memorandum in Support of the Individual Defendants' Motion to Dismiss, at 2. The Court, however, need not proceed under both subsections. While Rule 12(b)(6) controls where the jurisdictional question is intertwined with the substantive claim in the case, the Declaratory Judgment Act simply incorporates the constitution's case or controversy requirement and does not set out a separate basis for federal jurisdiction. *See Ashwander*, 297 U.S. at 325, 56 S.Ct. 466, 80 L.Ed. at 699 ("The Act ... providing for declaratory judgments, does not attempt to change the essential requisites for the exercise of judicial power ... [b]y its terms, it applies to 'cases of actual controversy' ...."). The Declaratory Judgement Act is also procedural and does not create a substantive cause of action. *See Nashville, C. & St. L. Ry. Co. v. Wallace*, 288 U.S. 249, 259, 264, 53 S.Ct. 345, 77 L.Ed. 730, 734, 736 (1933); *Akins v. Penobscot Nation*, 130 F.3d 482, 490 n. 9 (1st Cir.1997). The Court, therefore, may consider the jurisdictional question under Rule 12(b)(1) alone.

■ The Individual Defendants also attack jurisdiction facially and do not contest the underlying facts. They contend, for example, that "the Amended Complaint is devoid of any allegation that the Individual Defendants have asserted a monetary claim against Executive Risk or that Exec-

utive Risk and the Individual Defendants have an outstanding, ripe dispute . . . ," and that, "[a]s the Amended Complaint makes clear, only Sprint is seeking payment for the claims at issue under the . . . insurance policies issued by Executive Risk . . . ." Individual Defendants' Motion to Dismiss the Amended Complaint, at 1–2. Both the Individual Defendants and Executive Risk make some reference to facts outside the pleadings, but these are generally background facts which are agreed to or at least not overtly contested. The parties have not supplemented their memoranda of law with affidavits or other materials of evidentiary value, and they do not seek an evidentiary hearing in this matter. The limited references to matters outside the pleadings, therefore, are not sufficient to engage the protections of Rule 56.[5]

■ The crux of the Individual Defendants' argument is that they have not personally borne the defense costs thus far because Sprint has indemnified them for such costs. In addition, the Individual Defendants contend that the deemer clause, together with the tenth Whereas clause and the operative section of the Amendment referring to the tenth Whereas clause, render any future personal liability for such costs or settlement payments hypothetical and speculative. The Individual Defendants concede that if they are not indemnified in the future, and if they then have a claim under the liability policies, there would be a case or controversy with Executive Risk. Unless and until that happens, however, the Individual Defendants claim that the matter is not ripe and

that they should be dismissed without prejudice.

Executive Risk does not dispute that Sprint has indemnified the Individual Defendants thus far. However, Executive Risk points out that,

> neither Sprint nor the Individual Defendants have provided any verification that the Individual Defendants were indeed, or will under any and all circumstances continue to be, indemnified for the underlying claims—Sprint either has not been able to or willing to represent to Executive Risk in a reasonably adequate manner or in any form that it has agreed to fully indemnify the Individual Defendants *without reservation.*

Executive Risk Indemnity Inc.'s Response and Memorandum in Opposition to the Individual Defendants' Motion to Dismiss the Amended Complaint, at 2. (Emphasis in original).

The deemer clause and the Amendment certainly anticipate that Sprint will indemnify the Individual Defendants. Their operation and effect are uncertain, however, especially on the limited record before the Court. Considering all the facts and circumstances, these provisions do not deprive the Court of subject matter jurisdiction as to the Individual Defendants.

■ Regarding the deemer clause, whatever effect it might have on the parties' respective burdens and benefits as a matter of insurance law, this Court's jurisdiction is based on actual fact, not on what parties have "deemed" to exist. *Cf.* Black's Law Dictionary, 7th ed (deem: "To

---

5. The Court must consider the disagreement between Executive Risk and Sprint over the completeness of the insurance policies Executive Risk attached to its Amended Complaint. Executive Risk and Sprint agree that the portions provided are accurate and that they constitute most of the operative provisions. More importantly, Executive Risk and the In-

dividual Defendants argue exclusively from these provisions, and neither give any indication that the few allegedly omitted declarations, much less the cover sheets and indexes, have any bearing on the jurisdiction question. Under these circumstances, then, the Court will consider the motion to dismiss.

treat (something) as if (1) it were really something else, or (2) it has qualities that it doesn't have . . . ."). Nothing before the Court shows that Sprint has in fact adopted or amended its organizational documents or by-laws as the deemer clause suggests. Furthermore, the clause is framed in passive language—Sprint is deemed "to provide" indemnification, leaving open the question how and by whom the indemnification would be accomplished. It is a fine distinction, but Sprint is not deemed *to be required* to indemnify. *Compare National Union Fire Insurance Co. of Pittsburgh, PA. v. Continental Illinois Corp., et al.,* 110 F.R.D. 615, 620 (N.D.Ill. 1986) (where "indemnification is required" under certain circumstances by an incorporation document). The words "to the fullest extent provided by law" are also words of limitation, leaving a question whether the large sums at issue here are comprehended by the deemed indemnification.

More significantly, the paragraph after the deemer clause incorporates the possibility that Sprint might not indemnify even if allowed by law. As the paragraph states, the retention applies, "whether or not actual indemnification is made." The Amendment similarly incorporates the assumption that Sprint's deemed indemnification is not absolute. The tenth Whereas clause does not indicate the nature of the stated "agreement" or even the parties to it. The operative provisions of the Agreement, which follow the "Now, therefore" clause, are the only provisions which, under the terms of the Agreement, are supported by consideration and are binding on Executive Risk, Sprint, and the Individual Defendants. *See Grynberg v. F.E.R.C.,* 71 F.3d 413, 416 (D.C.Cir.1995) ("[I]t is standard contract law that a Whereas clause, while sometimes useful as an aid to interpretation, 'cannot create any right beyond those arising from the operative terms of the document,'" quoting *Abraham Zion Corp. v. Lebow,* 761 F.2d 93, 103 (2nd Cir.1985)). While the tenth Whereas clause is referenced in the operative section, the operative section actually lessens the facially obligatory character of the clause. Executive Risk's obligation to reimburse *"is premised* on Sprint's indemnification of [Defendants William T. Esrey, et al] for the amount at issue," and "[Executive Risk] will look exclusively to Sprint for reimbursement of such amount *so long as Sprint has provided indemnification to* [Defendants William T. Esrey, et al.] in accordance with the tenth Whereas clause of this Amendment."

In context, then, the deemer clause and the Amendment only repeat the terms of the insurance policies—*if* Sprint indemnifies, then Executive Risk will pay on behalf of Sprint the amounts Sprint pays as indemnification. All that can be said is that Executive Risk's obligations to the Individual Defendants are contingent on Sprint's indemnification of the Individual Defendants for defense costs and for any settlement or judgment for which Executive Risk would otherwise be liable to Defendants William T. Esrey, et al.

 In spite of the contingency, there is an actual case or controversy under Tenth Circuit precedent. "The contingent nature of the right or obligation in controversy will not bar a litigant from seeking declaratory relief when the circumstances reveal a need for a present adjudication." *Allendale Mut. Ins. Co. v. Kaiser Engineers,* 804 F.2d 592, 594 (1986), *cert denied* 482 U.S. 914, 107 S.Ct. 3185. In *Allendale,* the Tenth Circuit relied on *Maryland Casualty Co.,* 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826, which the circuit court summarized as follows:

a liability insurer brought a federal declaratory judgment action against its insured and an injured third party who had sued the insured in state court. In the federal action, the insurer sought a

judgment to the effect that it was not liable to defend or indemnify its insured. The injured third party argued that the complaint against him failed to state a cause of action because no actual controversy existed between him and the insurer. The Supreme Court held otherwise ... [t]hus, an actual controversy existed between the insurer and the insured party even though the latter's claim against the insurer was contingent on (1) his obtaining a final judgment against the insured, and (2) the insured's failure to satisfy that judgment within thirty days.

*Id.* Following this precedent the Tenth Circuit concluded that the district court in *Allendale* had jurisdiction where the insurer's obligation was contingent on the outcome of an appeal. *Id.*

In this case, similarly, Executive Risk's present obligations to the Individual Defendants make out a case or controversy. The insurance policies bind Executive Risk to cooperate with both the Individual Defendants and Sprint to determine a fair and proper allocation. Where the parties cannot agree, the final allocation is to be determined according to the policy or policies and the applicable law. Since the parties have not agreed and indemnification is not assured, the Individual Defendants remain interested parties with whom Executive Risk has an actual case or controversy. *See St. Paul Fire & Marine Ins. Co. v. Aetna Cas. & Sur. Co.,* 357 F.2d 315, 316 (10th Cir.1966) (Section 2201 contemplates a pragmatic approach to the determination of legal relations in controversy between interested parties ....).

And, independently from this consideration, Executive Risk has advanced $12,500,000.00 towards the settlement on an "interim basis," while reserving its rights because of the manner in which the Memorandum of Understanding was negotiated. The Individual Defendants were parties to that negotiation, with their own counsel, separate from Sprint, so obviously Executive Risk has a ripe case or controversy with them regarding the negotiations. *See Kunkel,* 866 F.2d at 1275 (uncertainty regarding an insurer's exposure or duties in settlement establish a ripe case or controversy).

The instant case, therefore, is distinguishable from *National Union,* upon which the Individual Defendants rely. The court in *National Union* found no case or controversy where some of the directors and officers had been dismissed from the underlying litigation, and where the corporation had indemnified those directors and officers. *See* 110 F.R.D. at 618–19. In the one remaining lawsuit in which most of the directors and officers were still defendants, no claim was "identified as falling outside the scope of [the corporation's] duty of indemnification." *Id.,* at 619. The "duty of indemnification" referred to by the court was found in the corporation's Certificate of Incorporation, which stated that "indemnification is required whenever a director or officer 'has been successful on the merits or otherwise in defense of any action, suit or proceeding ....' ". *See id.* at 620, Appendix.

In the instant case, the Individual Defendants are all still defendants in the underlying litigation, and they have entered into a tentative settlement binding them as co-payors of a large settlement. The Court cannot ignore this fact, no matter how much the Individual Defendants protest that their burden under the settlement will be covered by Sprint. They were insured as directors and officers, separately from Sprint; they were named as defendants in the underlying litigation, separately from Sprint; and they agreed to the Memorandum of Understanding, separately from Sprint. It is their involvement, separate from Sprint, which is real

and current. Their non-involvement due to a full indemnification by Sprint is hypothetical and yet to be accomplished.

Moreover, the Individual Defendants have not shown that Sprint has a "duty of indemnification" equal to that of the corporation in *National Union.* In that case, an existing Certificate of Incorporation required indemnification under certain circumstances, and the *National Union* court found no claim which fell outside those circumstances. Here, the existence, the obligatory nature, and the extent of the indemnification are, to differing degrees, all in question. Whatever result would be reached under the facts of *National Union* in this jurisdiction, the facts of this case reveal a need for a present adjudication of Executive Risk's legal relation with the Individual Defendants. The issues, therefore, are sufficiently immediate and real to warrant the issuance of a declaratory judgment.

2. Prudential considerations

The Court also concludes that it should exercise its discretion and retain jurisdiction. The matter is ripe for resolution given the existence of a pending settlement. The Court finds that a declaratory action would determine which policy or policies apply. Executive Risk's contention that Sprint and Defendants William T. Esrey, et al. acted unreasonably in settling is more nebulous, however there is no better procedural approach for clarifying the legal relations at issue. The Court does not find that the action was brought for purposes of procedural fencing or forum shopping. No other court is weighing a similar question, so comity is not an issue. In short, this declaratory judgment action is a prudent means to resolve the disputes between Executive Risk and the Individual Defendants.

IT IS THEREFORE ORDERED that the Individual Defendants' Motion to Dismiss (Doc. 46) is DENIED. The matter is returned to Magistrate Judge Donald Bostwick for further proceedings.